**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| _____ | |
| Stacy Fisher and | : |
| Braheem Boardley-Murray | : |
|     Plaintiffs | :    CIVIL ACTION NO. |
|         v. | : |
| Resources for Human Development | :    JURY TRIAL DEMANDED |
|     and | : |
| Letiki Branham | : |
|     and | : |
| Jasmine McGriff | : |
|     Defendants | : |
| _____ | |

## **COMPLAINT**

## INTRODUCTION

1.    Plaintiffs Stacy Fisher (hereinafter "Ms. Fisher") and Braheem Boardley-Murray (hereinafter "Mr. Boardley-Murray") are suing their former employer Defendant Resources for Human Development (hereinafter "Defendant RHD") and RHD management employees Letiki Branham (hereinafter "Defendant Branham") and Jasmine McGriff (hereinafter "Defendant McGriff") for subjecting them to unlawful workplace discrimination and retaliation that ultimately resulted in both Plaintiffs being terminated from their employment.

2.    Plaintiff Stacey Fisher alleges Defendants unlawfully discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"),  the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, et seq. ("FMLA"), the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219, the Pennsylvania Human Relations Act, 43 P.S. § 951 _et seq_. (PRHA), the Pennsylvania Whistleblower Law, 43 P.S. 1421, _et seq_. (PWL), the Pennsylvania Wage

1

Payment and Collection Law (PWPCL), the City of Philadelphia Fair Practices Ordinance § 9-1103(1) (PFPO), and defamation.

3.      Plaintiff Mr. Boardley-Murray alleges Defendants unlawfully discriminated and retaliated against him in violation of Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"),  the Pennsylvania Human Relations Act, 43 P.S. § 951 *et seq*. (PRHA), the Pennsylvania Whistleblower Law, 43 P.S. 1421, *et seq*. (PWL), the City of Philadelphia Fair Practices Ordinance § 9-1103(1) (PFPO), and defamation.

4.      Plaintiffs seek all damages available under these statutes and claims, including, but not limited to back pay, reinstatement or front pay, loss of earnings capacity, compensatory damages, punitive damages, liquidated damages, damages for emotional distress, pain and suffering, interest, compensation for negative tax consequence damages, injunctive relief, and attorney's fees and costs.


## Venue and Jurisdiction

5.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims under Title VII, the FMLA, and the FLSA. Furthermore, Defendants' conduct violated the PHRA, PWL, PWPCL, and PFPO, and the pendant jurisdiction of this Court is invoked to remedy those violations.

6.      Defendant RHD has its principal place of business in Philadelphia.

7.      Venue is appropriate in the Eastern District of Pennsylvania because the events or omissions giving rise to Plaintiffs claims occurred in this District and because all Defendants are subject to this District's personal jurisdiction with respect to this action.

8.      Ms. Fisher exhausted her administrative requirements pursuant to Title VII and PHRA by timely filing a complaint with the Equal Employment Opportunity Commission and dually filing with the Pennsylvania Human Relations Commission. Ms. Fisher received a Notice of Right to Sue from the EEOC on March 20, 2025, and this Complaint is filed within 90 days of that date. Exhibit A.

9.      Mr. Boardley-Murray exhausted his administrative requirements pursuant to Title VII and PHRA by timely filing a complaint with the Equal Employment Opportunity Commission and dually filing with the Pennsylvania Human Relations Commission. Mr. Boardley-Murray received a Notice of Right to Sue from the EEOC on March 31, 2025, and this Complaint is filed within 90 days of that date. Exhibit B.


<u>The Parties</u>

10.     Plaintiff Stacy Fisher is an adult individual residing at 524 Ruth Street, Buena, NJ 08310.

11.     Ms. Fisher is a citizen and resident of the United States.

12.     At all times relevant hereto, Ms. Fisher worked for Defendant RHD in Philadelphia.

13.     Plaintiff Braheem Boardley-Murray is an adult individual residing at 202 E. Sharpnack Street, Philadelphia, PA 19119.

14.     Mr. Boardley-Murray is a citizen and resident of the United States.

15.     At all times relevant hereto, Mr. Boardley-Murray worked for Defendant RHD in Philadelphia.

16.     Defendant Resources for Human Development, Inc. is a domestic non-profit corporation with its principal place of business at 4700 Wissahickon Avenue, Suite #126, Philadelphia.

17.     Upon information and belief, Defendant RHD employs more than one thousand employees.

18.     Defendant RHD is an employer as defined in Title VII, the FMLA, the FLSA, the PHRC, the PWPLC, and the Philadelphia FPO.

19.     Defendant RHD receives a significant amount of its funding by or through the Commonwealth and/or a political subdivision authority.

20.     Defendant RHD receives funding from the Pennsylvania Department of Health, the Pennsylvania Department of Community and Economic Development and Medicaid.

21.     Defendant RHD is an Employer as defined by the PA Whistleblower law.

22.     At all material times hereto, Defendant RHD acted through its employees, agents, representatives and/or servants who were acting within the course and scope of their employment and authority.

<u>Background of the Plaintiffs' Employment with Defendant RHD</u>

23.     Ms. Fisher was hired by Defendant RHD in or about February of 2021.

24.     Ms. Fisher was a Direct Support Professional working with consumers[1] in a residential living program in Philadelphia for people with mental disabilities located on Coles Boulevard (hereinafter "the Coles site").

---

[1] "Consumer" is the term used by RHD for the individuals with mental disabilities who live in the group homes run by RHD.

25.    Mr. Boardley-Murray was hired by Defendant RHD in or about November of 2021.

26.    Mr. Boardley-Murray was a Direct Support Professional working with consumers with mental disabilities at the Coles site.

27.    Mr. Boardley-Murray and Ms. Fisher are cousins by marriage.

<u>Facts Relating to the Plaintiffs' Claims</u>

28.    On October 26, 2024, Ms. Fisher called and spoke with Kelly McManus, a Program Specialist at Defendant RHD and told Ms. McManus that she felt threatened by a male employee (Steven Collins) who had harassed her calling her "Ms. supervisor manager lady." Ms. McManus told Ms. Fisher to put her complaint about this sex-based workplace harassment in writing to her site manager, Mr. Jamero Briley. Her texts with Ms. McManus and email to Mr. Briley are attached as Exhibit C.

29.    Ms. Fisher had worked at the Cole's site for more than three years and the man who had threatened her had worked there for less than three months.

30.    After reporting this sex-based harassment, Ms. Fisher was treated less favorably than the similarly situated male co-worker who harassed her. On October 28, 2024, she was required to transfer to a different site by Defendant RHD management employee Defendant Branham. The male harasser was allowed to stay at the Cole's site. The transfer letter, which references "the concerns you raised" is attached as Exhibit D.

31.    Defendant Branham told Ms. Fisher the transfer was for her safety.

32.    October 28, 2024, Ms. Fisher emailed Defendant Branham a complaint of discrimination and bias with the subject heading "Unwilling transfer" which is attached as Exhibit E.

33.    On or about October 31, 2024, Mr. Boardley-Murray contacted his director Defendant McGriff to report some of the consumers were suicidal and were not being allowed to speak with the staff they needed, which he believed may be a form of neglect.

34.    At the same time, Mr. Boardley-Murray also reported sexual harassment because his co-worker Alexis was telling people that he was sleeping with his cousin, Ms. Fisher, which was not true.

35.    In early November Mr. Boardley-Murray met with RHD investigator Mr. Hillary Mafura, who was conducting an investigation of the Coles site, and discussed his concerns about Defendant RHD consumers being neglected by Defendant RHD staff as part of an investigation by the Pennsylvania Department of Health.

36.    During the same conversation, Mr. Boardley-Murray also told Mr. Mafura about his sexual harassment concerns.

37.    On or about November 5, 2024, Ms. Fisher met with Mr. Mafura and discussed her concerns about Defendant RHD consumers being neglected by Defendant RHD staff at the Coles site as part of an investigation by the Pennsylvania Department of Health.

38.    Ms. Fisher also told Mr. Mafura about Mr. Collins harassing her using misogynistic language and how Defendant Branham transferred Ms. Fisher against her will after Ms. Fisher complained to Defendant Branham about that sex-based harassment.

39.    After this meeting Defendant Branham contacted Mr. Briley, the Coles site manager, and asked him to find out why Ms. Fisher met with Mr. Mafura for so long. Defendant Branham also refused to pay Ms. Fisher for some of the hours that she was working, cut her working hours in favor of a new temporary worker, and created a hostile work environment by telling new employees that Ms. Fisher had treated her co-workers badly.

40.    The Pennsylvania Department of Health had investigators come to the Coles site on or about November 5, 2024, and November 13, 2024, and again later in November 2024.

41.    During those visits, Mr. Boardley-Murray provided the Commonwealth investigators with information on the following issues involving potential waste, fraud and neglect:

    a. One of the consumers was not being given eye drops that he needed by RHD staff members Alexis and Steven Collins, and they were falsely recording in a book that they had been giving the medication. They had falsely claimed to have given the eye drops even on days when the medication was not available to be given.

    b. Consumers were claiming they were not able to meet with their support coordinators, but the coordinators were claiming they were meeting in person with the consumers and submitting bills for work Mr. Boardley-Murray did not believe they were doing.

c. Consumers had complaints that were being ignored because Defendant McGriff and Kelly McManus, another RHD manager, were preventing the consumers from making their complaints known.

d. RHD employee Steven Collins was taking consumers out to shop but then taking the consumer's money and using it for himself.

e. A consumer reported that an outside contractor from One Well had taken the consumer to a friend's house and made him take a shower at the friend's house which made the consumer very upset and feel violated. The contractors were taking the consumers to places the contractors wanted to go, when they were supposed to going to places the consumers wanted to go. This was a potential issue of waste and fraud because the outside contractor was not providing the services they were supposed to provide.

42. On November 8, 2024, Ms. Fisher wrote to Mr. Mafura complaining about workplace discrimination and retaliation and shared her concerns that Defendant Branham told other Defendant RHD staff members that she believed Ms. Fisher had called in a complaint to the Commonwealth which resulted in its investigation of the Coles site, a copy of which is attached as Exhibit F.

43. On November 11, 2024, Ms. Fisher wrote to Defendant Branham complaining about not being paid for the time she had worked. She sent additional e-mails regarding concerns about not being properly paid on November 29, December 2, and December 5, 2024. Exhibit G.

44.     On November 12, 2024, Mr. Boardley-Murray sent a follow-up text to Mr. Mafura telling him that he was concerned his harassment situation was being downplayed by his director, Defendant McGriff.  Mr. Mafura did not respond.  The texts are attached as Exhibit H.

45.     On November 19, 2024, Ms. Fisher requested the forms to apply for FMLA and submitted the completed forms on November 22.

46.     After Ms. Fisher and Mr. Boardley-Murray met with the Department of Health Officials, their site manager Jamero Briley told them that Defendant Branham and Defendant McGriff were targeting them because they had reported concerns to the state about the safety and treatment of Defendant RHD consumers.

47.     Mr. Briley told Ms. Fisher and Mr. Boardley-Murray that Defendant Branham and Defendant McGriff were saying not to trust them because they were the reason for the state's investigation of Defendant RHD.

48.     Mr. Briley told Mr. Boardley-Murray that Defendant McGriff asked about his looks and marital status in relation to his sexual harassment complaint.

49.     After Mr. Boardley-Murray told the investigators that consumers were not meeting in person with their support personnel despite records claiming they had, Kelly McManus asked him to sign a sign-in sheet for a meeting that had happened about a month earlier. The meeting was supposed to be a face to face meeting with the support coordinators and the consumers. Mr. Boardley-Murray and the consumers had showed up for the meeting expecting to be able to meet with the support coordinators, but Ms. McManus changed the meeting into a zoom meeting and told Mr. Boardley-Murray that he and the consumers would not be involved in the meeting.

50.     On or about November 20, 2024, a woman who lived next door to the group home, reported to Mr. Boardley-Murray that an RHD employee Kyle Murray (no relation) was sexually harassing her. Mr. Boardley-Murray reported that to Mr. Briley. Mr. Briley reported the sexual harassment to Defendant Branham and Defendant McGriff. Kyle Murray was not disciplined, only moved to another location.

51.     Ms. Fisher contacted Bernard Glavin, Defendant RHD's Executive Vice President about her discrimination and harassment concerns and he advised her to contact Ms. Manay Gunter, Defendant RHD's Director of Intellectual & Developmental Disabilities Service Line.

52.     On November 20, 2024, Ms. Fisher wrote to Ms. Gunter that she was being retaliated against for speaking to an investigator (Mr. Mafura) regarding allegations against Defendant RHD. She followed up with a more detailed explanation which included her concern about staff sexually harassing a woman who lived next door to the Defendant RHD site and informing Ms. Gunter that Mr. Boardley-Murray was a witness to the harassment and was also being harassed by management. These emails are attached as Exhibit I.

53.     Ms. Fisher also complained multiple times in writing that she was not being paid for all of the hours that she had worked, including overtime hours.

54.     On November 24, 2024, Mr. Boardley-Murray and Mr. Briley exchanged text messages about the false allegations being made against him by his co-workers. The texts are attached as Exhibit J.

55.     On November 27, 2024, Ms. Fisher wrote to Ms. Gunter again asking how to file a formal complaint and noted on October 30, 2024 she asked how to file a formal complaint but received no response.  This email is attached as Exhibit K.

56.     On December 4, 2024, Ms. Fisher wrote to Defendant McGriff asking why she told Sharon, one of the managers, that Ms. Fisher was not allowed to pick up open shifts at the Coles site. This email is attached as Exhibit L.

57.     Ms. Fisher's position was not filled until January of 2025.

58.     In early December Erin Payton, the Defendant RHD Director of Compliance, and a close friend of Defendant McGriff, called Mr. Boardley-Murray about his sexual harassment complaint. Ms. Payton told him some inappropriate things had been said about his looks, but it wasn't sexual harassment. Ms. Payton then asked Mr. Boardley-Murray why he reported his concerns about Defendant RHD to the state. Mr. Boardley-Murray told her that management had left him without support and that the consumers needed help.

59.     Shortly after that, Ms. Payton called Mr. Briley and asked him why Mr. Briley had told Mr. Boardley-Murray that Defendant McGriff was asking about his looks and marital status.   Ms. Payton also asked Mr. Briley why Mr. Boardley-Murray had complained to the state.

60.     Mr. Boardley-Murray then requested to be reassigned so he would not be under Defendant Branham and Defendant McGriff's supervision. He never received a reply to that request.

61.     After that, when new temp workers were sent to the Coles site, they would initially be hostile towards Mr. Boardley-Murray, but then they were friendly after they got

to know him. They told Mr. Boardley-Murray that Defendant Branham had told them that they shouldn't talk to him because he didn't like women, he bullied people, and he would get the consumers to harass staff members and get them fired.

62.    On December 6, 2024, Mr. Boardley-Murray texted Josh another RHD supervisor that Defendant Branham had told Mr. Briley that his complaints were "ridiculous nonsense." Josh wrote back that Mr. Boardley-Murray's complaint had "been escalated on our end." A photo of the text is attached as Exhibit M.

63.    Mr. Boardley-Murray continued to report his concerns of Defendant RHD staff members treating consumers improperly. On December 11, 2024, he communicated with Michelle Holmes, an RHD supervisor about an incident where Alexis had started a night shift at the Coles site and forced a consumer who had been watching TV in the living room to go in his room, shut his door and told him not to come out so she could sleep during her shift.  Exhibit N.

<u>Defendants Suspend and Terminate Both Plaintiffs</u>

64.    On December 14, 2024, Ms. Fisher was suspended by Defendant Branham pending the outcome of an investigation. Ms. Fisher wrote to ask why she was being investigated and Defendant Branham responded she was not at liberty to discuss it and an investigator would reach out to her. This email chain is attached as Exhibit O.

65.    No investigator ever contacted Ms. Fisher about any allegations against her.

66.    Ms. Fisher had no prior discipline or complaints in the three years she had been working for Defendant RHD.

67.    Mr. Boardley-Murray went on vacation on December 16, 2024.

68.     On December 18, 2024, Defendant RHD posted Mr. Boardley-Murray's position as a job opening. A photo of the Job Posting is attached as Exhibit P.

69.     On December 19, 2024, Ms. Fisher's attorney sent a detailed email to Mr. Glavin as well as Shenise Hariston (Defendant RHD's Director of HR), and Brian Rhodes, (Defendant RHD's CEO). A copy is attached as Exhibit Q.

70.     The email stated, "Defendant Branham's suspension of Ms. Fisher appears to be part of the pattern of retaliation that Ms. Fisher has suffered over the prior seven weeks." It raised potential legal claims including the Pennsylvania Whistleblower Law, the Pennsylvania Wage Payment and Collection Law and the Federal Fair Labor Standards Act, the Family and Medical Leave Act, Title VII of the Civil Rights Act, and the Pennsylvania Human Relations Act.

71.     On December 23, 2024, Mr. Boardley-Murray wrote to Mr. Mafura again telling him that he might be out of work because he saw his shift posted, a copy of the text is attached as Exhibit G.

72.     Later that day, Mr. Boardley-Murray received a call from Defendant RHD representative Barry Harris, telling him that he had been put on administrative leave.

73.     Mr. Boardley-Murray had no prior discipline in the three years he had worked for Defendant RHD.

74.     On January 13, 2025, Ms. Fisher was fired on a Zoom call with Defendant McGriff, Amira Thomas (Regional Director) and Monica Ewells (HR). Defendant McGriff told Ms. Fisher that she had committed theft and misuse of a consumer's funds.  Ms. Fisher asked what they were talking about, and they would not explain. They said she would receive a letter in the mail.

75.     A few days later Ms. Fisher received a termination letter dated January 10, 2025. A copy of the letter is attached as Exhibit R.

76.     Upon information and belief, Defendants RHD, Branham, and McGriff knowingly and falsely accused Ms. Fisher of theft or misappropriation of RHD or client property, cash, credit, or funds.  Exhibit R.

77.     On or about January 13, Ms. Holmes called Mr. Boardley-Murray and interviewed him about the incident where Alexis had forced a consumer to stay in his room with the door shut. Mr. Boardley-Murray also told her that Defendant Branham was harassing him. He recalls getting a call shortly after that from Defendant McGriff telling him that his employment with Defendant RHD was terminated.

78.     Mr. Boardley-Murray received a letter dated January 10, 2025. A copy of the letter is attached as Exhibit S.

79.     Upon information and belief, Defendants RHD, Branham, and McGriff knowingly and falsely accused Mr. Boardley-Murray of violations of safety or health policies and/or negligent/unsafe behaviors that may endanger another person, destruction of property and/or equipment.  Exhibit S.

80.     Mr. Boardley-Murray does not know what the letter was referring to and no one ever explained to him what he allegedly did or asked for his side of the story.

81.     Ms. Fisher wrote to Mr. Briley asking if he knew what she was accused of doing.  He wrote back, "nobody ever said anything about money to me at all I do believe it's a lie they just needed something." A copy of the text messages are attached as Exhibit T.

82.     Ms. Fisher requested unemployment compensation and was awarded benefits because Defendant RHD did not provide any information about why her employment was terminated.

83.     As a direct and proximate result of Defendants' unlawful actions as described herein, Mr. Fisher has suffered past, present and future loss of earnings and benefits, emotional distress, mental anguish, humiliation, loss of life's pleasures, pain and suffering, damage to reputation, and has incurred attorneys' fees and costs.

84.     As a direct and proximate result of Defendants' unlawful actions as described herein, Mr. Boardley-Murray has suffered past, present and future loss of earnings and benefits, emotional distress, mental anguish, humiliation, loss of life's pleasures, pain and suffering, damage to reputation, and has incurred attorneys' fees and costs.

<u>COUNT I</u>
<u>Title VII, 42 U.S. C. § 2000e-3(a)</u>
<u>Discrimination and Retaliation Due to Sex</u>
<u>Plaintiff Stacy Fisher vs. Defendant RHD</u>

85.     Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

86.     Defendant RHD discriminated against Ms. Fisher due to her sex by transferring her to a less favorable work location against her will and allowing the male employee who harassed her to stay at her former work location.

87.     Ms. Fisher engaged in protected activity under Title VII as set forth in this complaint, including, but not limited to:

    a. Reporting sex related workplace harassment, when she complained to RHD management about Mr. Collins, a male employee who had harassed her calling her "Ms. supervisor manager lady" on October 26, 2024. See Exhibit C.

    b. Emailing Defendant Branham on October 28, 2024, a complaint of discrimination and bias with the subject heading "Unwilling transfer" which is attached as Exhibit E.

    c. Telling Mr. Mafura on November 5, 2024, about Mr. Collins harassing her using misogynistic language and how Defendant Branham transferred Ms. Fisher against her will after Ms. Fisher complained to Defendant Branham about that sex-based harassment.

    d. Writing to Ms. Gunter on November 20, 2024, about staff sexually harassing eldly [sic] woman next door."

88.    Defendant RHD engaged in materially adverse retaliation against Ms. Fisher for her protected activity as set forth in this complaint, including, but not limited to:

    a. Transferring her to a less favorable work location against her will;

    b. Refusing to allow her to work requested hours;

    c. Failing to pay her properly for time worked;

    d. Harassing her in her workplace and spreading false rumors about her to other staff members;

    e. Failing to properly investigate or respond to her claims of discrimination and retaliation;

      f.   Suspending her from employment on or about December 14, 2024;

      g.   Terminating her employment on or about January 10, 2025.

89.    There was a causal connection between Ms. Fisher's protected activity under the Title VII and Defendant RHD's materially adverse retaliatory actions taken against her.

90.    The retaliation endured by Ms. Fisher would dissuade a reasonable employee from making complaints of discrimination, harassment, and retaliation.

91.    Defendant RHD retaliated against Ms. Fisher for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

WHEREFORE, Ms. Fisher respectfully requests this Court:

A.    Issue a Declaratory Judgment declaring that Defendant RHD's actions as set forth in this Complaint are unlawful and violate Title VII.

B.    Issue equitable/injunctive relief including:

    (1)   Issue preliminary and permanent injunctions enjoining and restraining Defendant RHD, its officers, agents, employees, and those acting in participation with Defendant RHD, from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of Title VII.

    (2)   Order Defendant RHD to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under Title VII—with the training specifics to

be tailored to the problems, deficiencies, and gaps that the evidence shows.

(3)    Order Defendant RHD to deliver to its employees a copy of the jury verdict and trial court judgment.

(4)    Order Defendant RHD to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under Title VII—with the reporting specifics to be tailored based on the evidence.

(5)    Order Defendant RHD to reinstate Ms. Fisher upon such terms and conditions as will put Ms. Fisher in the position Ms. Fisher would have occupied had Defendant RHD not unlawfully discriminated against Ms. Fisher.

C.    Enter judgment in favor of Ms. Fisher and against Defendant RHD for back pay, including wages and fringe benefits.

D.    Enter judgment in favor of Ms. Fisher for front pay in lieu of reinstatement.

E.    Enter judgment in favor of Ms. Fisher and against Defendant RHD for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

F.    Enter judgment in favor of Ms. Fisher and against Defendant RHD for punitive damages, as allowable by law.

G.      Award Ms. Fisher reasonable attorney's fees together with the costs
        of this action.

H.      Award Ms. Fisher pre-judgment and post-judgment interest.

I.      Enter judgment in favor of Ms. Fisher for any other monetary losses
        as a direct result of Defendant RHD's violation of Title VII, including
        but not limited to negative tax consequence damages.

J.      Award such other and further legal and equitable relief as may be
        necessary and appropriate to redress fully the deprivation of Ms.
        Fisher's rights, to prevent their recurrence in the future and to protect
        other employees from such unlawful behavior.

COUNT II
FMLA Retaliation
Plaintiff Stacy Fisher vs. All Defendants

92.     Plaintiffs re-allege and incorporate by reference the preceding
paragraphs as though fully set forth herein.

93.     Ms. Fisher was an eligible employee under the definitional terms of the
FMLA, 29 U.S.C. § 2611(a)(i)(ii).

94.     Ms. Fisher took time off from working with Defendant RHD, with whom she
had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.
§ 2611(2)(i).

95.     Ms. Fisher had at least 1,250 hours of service with Defendant RHD during
her last full year of employment (pre-FMLA request).

96.    Defendant is engaged in an industry affecting commerce and employs fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

97.    Ms. Fisher was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

98.    As averred above, on November 21, 2024, Ms. Fisher requested FMLA leave which Defendant RHD granted shortly thereafter.

99.    After requesting FMLA leave, Ms. Fisher was retaliated against and subjected to harassment by Defendants RHD, Branham and McGriff which ultimately led to her suspension and termination.

100.    Defendants Branham and McGriff were involved in the decision to suspend and terminate Ms. Fisher's employment.

101.    Defendants RHD, Branham and McGriff retaliated against Ms. Fisher by suspending and firing her after she exercised her FMLA rights.

102.    There was a causal connection between Ms. Fisher's exercise of her rights under the FMLA and the Defendants' materially adverse retaliatory actions taken against her.

WHEREFORE, Ms. Fisher respectfully requests this Court:

A.    Issue a Declaratory Judgment declaring that Defendants' actions as set forth in this Complaint are unlawful and violate the FMLA.

B.    Issue equitable/injunctive relief including:

(1)    Issue preliminary and permanent injunctions enjoining and restraining Defendant RHD, its officers, agents, employees, and those acting in participation with Defendants, from engaging in any act or practice of interference, discrimination, and/or retaliation against employees in violation of the FMLA.

(2)    Order Defendant RHD to provide training to all employees on interference, discrimination, and retaliation prevention and related compliance under the FMLA—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

(3)    Order Defendant RHD to deliver to its employees a copy of the jury verdict and trial court judgment.

(4)    Order Defendant RHD to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under the FMLA—with the reporting specifics to be tailored based on the evidence.

(5)    Order Defendant RHD to reinstate Ms. Fisher upon such terms and conditions as will put Ms. Fisher in the position Ms. Fisher would have occupied had Defendants not unlawfully retaliated against Ms. Fisher.

C.    Enter judgment in favor of Ms. Fisher and against Defendants RHD, Branham and McGriff for back pay, including wages and fringe benefits.

D.    Enter judgment in favor of Ms. Fisher for front pay in lieu of reinstatement.

E.    Enter judgment in favor of Ms. Fisher and against Defendants RHD, Branham and McGriff for liquidated damages, as allowable by law.

F.    Award Ms. Fisher reasonable attorney's fees together with the costs of this action.

G.    Award Ms. Fisher pre-judgment and post-judgment interest.

H.    Enter judgment in favor of Ms. Fisher for any other monetary losses as a direct result of Defendants' violation of the FMLA, including but not limited to negative tax consequence damages.

I.    Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Ms. Fisher's rights, to prevent their recurrence in the future and to protect other employees from such unlawful behavior.

<u>COUNT III</u>
<u>FLSA Violations and Retaliation</u>
<u>Plaintiff Stacy Fisher vs. All Defendants</u>

103.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

104.    At all times material herein, Ms. Fisher was entitled to the rights, protections and benefits provided under the FLSA, 29 U.S.C. § 201, et seq.

105.    When Ms. Fisher worked hours in excess of 40 hours per week, she was entitled to overtime compensation at a rate of one and one-half times her regular rate of

pay for each additional hour or fraction thereof worked. 29 U.S.C. § 207; 29 C.F.R. § 553.230.

106.    Defendant RHD failed and refused to pay Ms. Fisher for some of the hours she worked.

107.    Defendant RHD failed and refused to provide Ms. Fisher in a timely manner for hours she worked.

108.    Defendant RHD failed and refused to provide Ms. Fisher with overtime compensation at a rate of one and one-half times her regular rate of pay.

109.    Defendant RHD's FLSA violations wrongly deprived Ms. Fisher of compensation she was owed, including the FLSA overtime compensation that is due to her at times material herein.

110.    At all relevant times, Defendant RHD has been aware of the provisions of the FLSA. Defendant RHD's actions and omissions as alleged herein were knowing, willful, bad faith, and reckless violations of 29 U.S.C. section 207 within the meaning of 29 U.S.C. section 255(a).

111.    As a result of the aforesaid willful violations of the FLSA, compensation has been unlawfully withheld by Defendant RHD from Ms. Fisher for which Defendant RHD is liable pursuant to the FLSA, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and the costs of this action.

112.    The employment and work records for Ms. Fisher are in the exclusive possession, custody and control of Defendant RHD, so she is unable to state at this time the exact amounts owing to her. Defendant RHD is under a duty imposed by the FLSA,

29 U.S.C. § 211(c), and the regulations of the United States Department of Labor to maintain and preserve payroll and other employment records.

113.    Ms. Fisher complained in writing and orally to Defendant RHD about its failure to pay her for the time she worked, including overtime hours. Please see Exhibit G.

114.    Section 15(a)(3) of the FLSA states that it is a violation for *any person* to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

115.    Ms. Fisher's complaints to Defendant RHD about its failure to pay her for the time she worked, including overtime hours, is protected activity under Section 15(a)(3) of the FLSA.

116.    Defendants RHD, Branham and McGriff retaliated against Ms. Fisher by suspending and firing her after she complained about a potential violation of her FLSA rights.

117.    There was a causal connection between Ms. Fisher's complaint about a potential violation of her FLSA rights and the Defendants' materially adverse retaliatory actions taken against her.

WHEREFORE, Ms. Fisher requests from the Court the following relief:

A.    A declaratory judgment declaring that Defendant RHD has willfully, unreasonably, wrongfully, and without good faith, violated its

statutory and legal obligations, and deprived Ms. Fisher of her rights, protections and entitlements under federal law, as alleged herein;

B.    An order for a complete and accurate accounting of all the compensation to which Plaintiffs are entitled;

C.    Judgment against Defendant RHD awarding Ms. Fisher monetary damages in the form of back pay compensation, liquidated damages equal to her unpaid compensation, plus pre-judgment and post-judgment interest;

D.    An award of punitive damages against Defendants RHD, Branham and McGriff due to their retaliation against Ms. Fisher in violation of the FLSA;

E.    An award of damages for emotional distress, pain and suffering, against Defendants RHD, Branham and McGriff due to their retaliation against Ms. Fisher in violation of the FLSA;

F.    An award of reasonable attorneys' fees, as well as costs and disbursement of this action; and

G. An award granting such other further relief as the Court deems proper.


<u>COUNT IV</u>
<u>VIOLATION OF PENNSYLVANA HUMAN RELATIONS ACT</u>
<u>Discrimination and Retaliation due to Sex</u>
<u>Plaintiff Stacy Fisher v. All Defendants</u>

118.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

119.    Defendant RHD discriminated against Ms. Fisher due to her sex by transferring her to a less favorable work location against her will and allowing the male employee who harassed her to stay at her former work location.

120.    Ms. Fisher engaged in protected activity under the PHRA as set forth in this complaint, including, but not limited to:

a. Reporting sex related workplace harassment, when she complained to RHD management about Mr. Collins, a male employee who had harassed her calling her "Ms. supervisor manager lady" on October 26, 2024. See Exhibit C.

b. Emailing Defendant Branham on October 28, 2024, a complaint of discrimination and bias with the subject heading "Unwilling transfer" which is attached as Exhibit E.

c. Telling Mr. Mafura on November 5, 2024, about Mr. Collins harassing her using misogynistic language and how Defendant Branham transferred Ms. Fisher against her will after Ms. Fisher complained to Defendant Branham about that sex-based harassment.

d. Writing to Ms. Gunter on November 20, 2024, about staff sexually harassing eldly [sic] woman next door."

121.    Section 955(e) of the PHRA prohibits "any person, employer, employment agency, labor organization, or employee to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."

122.    Defendants RHD, Branham and McGriff engaged in materially adverse retaliation against Ms. Fisher for her protected activity as set forth in this complaint, including, but not limited to:

    a.  Transferring her to a less favorable work location against her will;

    b.  Refusing to allow her to work requested hours;

    c.  Failing to pay her properly for time worked;

    d.  Harassing her in her workplace and spreading false rumors about her to other staff members;

    e.  Failing to properly investigate or respond to her claims of discrimination and retaliation;

    f.  Suspending her from employment on or about December 14, 2024;

    g.  Terminating her employment on or about January 10, 2025.

123.    There was a causal connection between Ms. Fisher's protected activity under the PHRA and the retaliated materially adverse retaliatory actions taken against her by Defendants RHD, Branham and McGriff.

124.    The retaliation endured by Ms. Fisher would dissuade a reasonable employee from making complaints of discrimination and harassment.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that Defendants' actions set forth herein are unlawful and in violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*;

B.    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and

employees and those acting in participation with Defendants from engaging in any act or practice of discrimination against Plaintiff in violation of the Pennsylvania Human Relations Act and ordering Defendants to reinstate Plaintiff upon such terms and conditions as will return Plaintiff to the position she would have occupied had Defendants not unlawfully discriminated against her;

C.      Enter judgment in favor of Plaintiff, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by her;

D.      Enter judgment in favor of Plaintiff for front pay in lieu of reinstatement;

E.      Enter judgment in favor of Plaintiff awarding her liquidated or punitive damages to the extent allowable by law for the willful violation of the PHRA;

F.      Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff; and,

G.      Award Plaintiff reasonable attorney's fees together with the costs of this action.

Count V
RETALIATION IN VIOLATION OF PENNSYLVANIA
WHISTLEBLOWER LAW 43 P.S. 1421, *et seq.*, as amended
Plaintiff Stacy Fisher vs. All Defendants

125.    Plaintiffs incorporate herein by reference the preceding paragraphs as is set forth at length herein.

126.    Ms. Fisher was required by Defendant's RHD's ethics policies to report suspected waste, billing fraud, and neglect of consumers.

127.    Ms. Fisher engaged in protected activity under the PAWBL by reporting her concerns about the safety and wellbeing of the mentally disabled consumers who she was assigned to work with during her employment with Defendant RHD to both RHD management and the Commonwealth investigators who investigated Defendant RHD's facilities in November of 2024.

128.    Ms. Fisher's protected activity involved reporting fraud involving government funds to RHD's Hillary Mufasa in early November of 2024, telling him that consumers were claiming they were not able to communicate with their support coordinators, but the coordinators were claiming they were meeting in person with the consumers and submitting bills for work Ms. Fisher did not believe they were doing.

129.    Ms. Fisher also reported to RHD's Kelly McManus and later Hillary Mufasa that a female outside contractor from One Well had taken a male consumer to a friend's house and made him take a shower at the friend's house which made the consumer very upset and feel violated. The contractors were taking the consumers to places the contractors wanted to go, when they were supposed to be going to places the consumers wanted to go.   This was a potential issue of waste and fraud because the outside contractor was not providing the services they were supposed to provide.   She also reported this to the investigators from the Commonwealth who visited the Coles site in November or 2024.

130.    Ms. Fisher's protected activity also included telling Hillary Mufasa Defendant Branham was ignoring complaints from a consumer about how another RHD staff member made him uncomfortable and failed to investigate his complaint. Defendant RHD's rules state that if a consumer does not feel comfortable working with an employee they have the right to request a change.

131.    Defendants were aware that Ms. Fisher engaged in protected activity under the PAWBL.

132.    Defendants retaliated against Ms. Fisher because she engaged in protected activity under the PAWBL, including, but not limited to:

a.  Refusing to allow her to work requested hours;

b.  Failing to pay her properly for time worked;

c.  Harassing her in her workplace and spreading false rumors about her to other staff members;

d.  Failing to properly investigate or respond to her claims of discrimination and retaliation;

e.  Suspending her from employment on or about December 14, 2024; and

f.  Terminating her employment on or about January 10, 2025.

133.    The actions of Defendants by and through their agents, servants, and employees, constitute a violation of the PAWBL.

134.    As a direct and proximate result of Defendants' violation of the PAWBL Ms. Fisher has suffered lost wages, suffered emotional distress, mental anguish, humiliation, loss of life's pleasures, pain and suffering, and has incurred attorneys' fees and costs.

135.    Ms. Fisher is now suffering, and will continue to suffer, irreparable injury and monetary damages, as a result of Defendants' unlawful acts, unless this Court grants the relief requested herein.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that the retaliatory practices set forth herein are unlawful and in violation of the Pennsylvania Whistleblower Law, 43 P.S. 1421, *et seq*.

B.    Enjoying and permanently restraining the violations alleged herein;

C.    Compensatory damages to make Ms. Fisher whole for past and future lost earnings, benefits and earning capacity;

D.    Compensatory damages to Ms. Fisher for past and future emotional distress, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

E.    Punitive damages;

F.    Reasonable attorneys' fees and costs; and

G.    Such other and further relief as this Court deems appropriate.


<u>COUNT VI</u>
<u>Pennsylvania Wage Payment and Collection Law Violations and Retaliation</u>
<u>43 Pa. Stat. Ann. §§ 260.3, et seq.</u>
<u>Plaintiff Stacy Fisher vs. Defendant RHD</u>


136.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

137. At all times material herein, Ms. Fisher was entitled to the rights, protections and benefits provided under Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 Pa. Stat. Ann. §§ 260.3, et seq

138. Defendant RHD failed and refused to pay Ms. Fisher her agreed upon wages, including not paying her for some of the hours she worked, not paying overtime when required to do so and failing to pay her in a timely manner for hours she worked, all of which violated the PWPCL.

139. At all relevant times, Defendant RHD has been aware of the provisions of the PWPCL. Defendant RHD's actions and omissions as alleged herein were knowing, willful, bad faith, and reckless violations of the PWPCL.

140. As a result of the aforesaid willful violations of the PWPCL, compensation has been unlawfully withheld by Defendant RHD from Ms. Fisher for which Defendant RHD is liable pursuant to the PWPCL, together with an additional equal amount as liquidated damages, interest, reasonable attorneys' fees and the costs of this action.

141. The employment and work records for Ms. Fisher are in the exclusive possession, custody and control of Defendant RHD, so she is unable to state at this time the exact amounts owing to her.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that the practices set forth herein are unlawful and in violation of the Pennsylvania Wage Payment and Collection Law

B.    Enjoying and permanently restraining the violations alleged herein;

C.   Compensatory damages to make Ms. Fisher whole for past and future lost earnings, benefits and earning capacity;

D.   Liquidated damages;

E.   Reasonable attorneys' fees and costs; and

F.   Such other and further relief as this Court deems appropriate.


<u>COUNT VII</u>
<u>Philadelphia Fair Practices Ordinance</u>
<u>Phila. Code § 9-1101, et seq.</u>
<u>Discrimination and Retaliation due to Sex</u>
<u>Plaintiff Stacy Fisher vs. Defendant RHD</u>

142.   Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

143.   Defendant RHD discriminated against Ms. Fisher due to her sex by transferring her to a less favorable work location against her will and allowing the male employee who harassed her to stay at her former work location.

144.   Ms. Fisher engaged in protected activity under the PFPO as set forth in this complaint, including, but not limited to:

a.   Reporting sex related workplace harassment, when she complained to RHD management about Mr. Collins, a male employee who had harassed her calling her "Ms. supervisor manager lady" on October 26, 2024. See Exhibit C.

b.   Emailing Defendant Branham on October 28, 2024, a complaint of discrimination and bias with the subject heading "Unwilling transfer" which is attached as Exhibit E.

c.  Telling Mr. Mafura on November 5, 2024, about Mr. Collins harassing her using misogynistic language and how Defendant Branham transferred Ms. Fisher against her will after Ms. Fisher complained to Defendant Branham about that sex-based harassment.

d.  Writing to Ms. Gunter on November 20, 2024, about staff sexually harassing eldly [sic] woman next door."

145.    Defendant RHD engaged in materially adverse retaliation against Ms. Fisher for her protected activity as set forth in this complaint, including, but not limited to:

a.  Transferring her to a less favorable work location against her will;

b.  Refusing to allow her to work requested hours;

c.  Failing to pay her properly for time worked;

d.  Harassing her in her workplace and spreading false rumors about her to other staff members;

e.  Failing to properly investigate or respond to her claims of discrimination and retaliation;

f.  Suspending her from employment on or about December 14, 2024;

g.  Terminating her employment on or about January 10, 2025.

146.    There was a causal connection between Ms. Fisher's protected activity under the PFPO and Defendant RHD's materially adverse retaliatory actions taken against her.

147.    The retaliation endured by Ms. Fisher would dissuade a reasonable employee from making complaints of discrimination and harassment.

148.    Defendant RHD retaliated against Ms. Fisher for engaging in protected activity in violation of the PFPO.

149.    Defendant's conduct was outrageous because of the defendant's evil motive or its reckless indifference to the rights of others.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that Defendants' actions set forth herein are unlawful and in violation of the City of Philadelphia Fair Practices Ordinance § 9-1103(1) (PFPO)

B.    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination against Plaintiff in violation of the City of Philadelphia Fair Practices Ordinance and ordering Defendants to reinstate Plaintiff upon such terms and conditions as will return Plaintiff to the position she would have occupied had Defendants not unlawfully discriminated against her;

C.    Enter judgment in favor of Plaintiff, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by her;

D.    Enter judgment in favor of Plaintiff for front pay in lieu of reinstatement;

E.    Enter judgment in favor of Plaintiff awarding her liquidated and/or punitive damages to the extent allowable by law for the willful violation of the PFPO;

F.    Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff; and,

G.    Award Plaintiff reasonable attorney's fees together with the costs of this action.


<u>COUNT VIII</u>
<u>Defamation</u>
<u>Plaintiff Stacy Fisher vs. All Defendants</u>

150.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

151.    Ms. Fisher is a private individual as defined by applicable Pennsylvania defamation law.

152.    While acting in her capacity as management employee of Defendant RHD, Defendant McGriff knowingly and falsely and/or with reckless disregard for the truth, stated that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash, credit, or funds. during a Zoom call on or about January 13, 2025, which included at least one other party, Amira Thomas.

153.    Upon information and belief, Defendant McGriff told additional individuals that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash,

36

credit, or funds, while acting in her capacity as management employee of Defendant RHD.

154.    While acting in her capacity as management employee of Defendant RHD, Defendant McGriff caused a letter to be written dated January 10, 2025, that knowingly and falsely and/or with reckless disregard for the truth, stated that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash, credit, or funds. Exhibit R.

155.    Upon information and belief, Defendant McGriff published this letter by allowing one or more other people to read it.

156.    Pleading in the alternative, Ms. Fisher alleges that Defendant McGriff's defamatory statements may have been made negligently without exercising reasonable care in establishing their accuracy.

157.    Upon information and belief, while acting in her capacity as management employee of Defendant RHD, Defendant Branham knowingly and falsely and/or with reckless disregard for the truth told others that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash, credit, or funds.

158.    Pleading in the alternative, Ms. Fisher alleges that Defendant Branham's defamatory statements may have been made negligently without exercising reasonable care in establishing their accuracy.

159.    Ms. Fisher had not committed theft or misappropriation of RHD or client property, cash, credit, or funds.

160.    The false accusation that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash, credit, or funds is defamation per se.

161.    The false accusation that Ms. Fisher had committed theft or misappropriation of RHD or client property, cash, credit, or funds resulted in harm to Ms. Fisher including the termination of her employment and harm to her personal and professional reputation, resulting in past, present and future loss of earnings and benefits, emotional distress, mental anguish and suffering, personal humiliation, loss of life's pleasures, pain and suffering, and has incurring attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that Defendants' actions set forth herein were defamatory.

B.    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and employees and those acting in participation with Defendants from engaging in any act or practice of defamation against Plaintiff;

C.    Enter judgment in favor of Plaintiff, and against Defendants, for past and future economic losses, including amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by her;

D.    Enter judgment in favor of Plaintiff, and against Defendants, for past and future  harm to Plaintiff's personal and professional reputation, emotional distress, mental anguish and suffering, personal humiliation, loss of life's pleasures, pain and suffering.

E.     Enter judgment in favor of Plaintiff, and against Defendants, for punitive damages if the defamatory statements were made knowingly and falsely or with reckless disregard for the truth.

F.     Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff.

## COUNT IX
### Title VII, 42 U.S. C. § 2000e-3(a)
### Retaliation for Reporting Sexual Harassment
### Plaintiff Braheem Boardley-Murray vs. Defendant RHD

162.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

163.    Mr. Boardley-Murray engaged in protected activity under Title VII as set forth in this complaint, including, but not limited to:

a.    On or about October 31, 2024, Mr. Boardley-Murray contacted his director Defendant McGriff and reported sexual harassment because his co-worker Alexis was telling people that he was sleeping with his cousin, Ms. Fisher, which was not true.

b.    In early November of 2024 Mr. Boardley-Murray met with Mr. Hillary Mafura, who was conducting an investigation of the Coles site and discussed his sexual harassment concerns about the rumor Alexis was spreading about him.

c.  On or about November 20, 2024, reporting to Mr. Briley that a woman who lived next door to the group home, alleged that an RHD employee Kyle Murray (no relation) was sexually harassing her. Mr. Briley reported the sexual harassment to Defendant Branham and Defendant McGriff.

164.    Defendant RHD engaged in materially adverse retaliation against Mr. Boardley-Murray for his protected activity as set forth in this complaint, including, but not limited to:

a.  Harassing him in her workplace and spreading false rumors about him to other staff members;

b.  Failing to properly investigate or respond to his claims of discrimination and retaliation;

c.  Putting him on administrative leave on or about December 23, 2024; and

d.  Terminating his employment on or about January 10, 2025.

165.    There was a causal connection between Mr. Boardley-Murray's protected activity under the Title VII and Defendant RHD's materially adverse retaliatory actions taken against him.

166.    The retaliation endured by Mr. Boardley-Murray would dissuade a reasonable employee from making complaints of discrimination, harassment, and retaliation.

167.    Defendant RHD retaliated against Mr. Boardley-Murray for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

WHEREFORE, Plaintiff Braheem Boardley-Murray respectfully requests this Court:

A.    Issue a Declaratory Judgment declaring that Defendant RHD's actions as set forth in this Complaint are unlawful and violate Title VII.

B.    Issue equitable/injunctive relief including:

   (1)    Issue preliminary and permanent injunctions enjoining and restraining Defendant RHD, its officers, agents, employees, and those acting in participation with Defendant RHD, from engaging in any act or practice of harassment, discrimination, and/or retaliation against employees in violation of Title VII.

   (2)    Order Defendant RHD to provide training to all employees on harassment, discrimination, and retaliation prevention and related compliance under Title VII—with the training specifics to be tailored to the problems, deficiencies, and gaps that the evidence shows.

   (3)    Order Defendant RHD to deliver to its employees a copy of the jury verdict and trial court judgment.

   (4)    Order Defendant RHD to report on the manner of compliance with the terms of any final order for non-monetary equitable relief issued under Title VII—with the reporting specifics to be tailored based on the evidence.

   (5)    Order Defendant RHD to reinstate Mr. Boardley-Murray upon such terms and conditions as will put him in the position he would

have occupied had Defendant RHD not unlawfully discriminated against him.

C.      Enter judgment in favor of Mr. Boardley-Murray and against Defendant RHD for back pay, including wages and fringe benefits.

D.      Enter judgment in favor of Mr. Boardley-Murray for front pay in lieu of reinstatement.

E.      Enter judgment in favor of Mr. Boardley-Murray and against Defendant RHD for compensatory damages for emotional distress, career damage, loss of earnings capacity, mental anguish, humiliation, embarrassment, and loss of dignity.

F.      Enter judgment in favor of Mr. Boardley-Murray and against Defendant RHD for punitive damages, as allowable by law.

G.      Award Mr. Boardley-Murray reasonable attorney's fees together with the costs of this action.

H.      Award Mr. Boardley-Murray pre-judgment and post-judgment interest.

I.      Enter judgment in favor of Mr. Boardley-Murray for any other monetary losses as a direct result of Defendant RHD's violation of Title VII, including but not limited to negative tax consequence damages.

J.      Award such other and further legal and equitable relief as may be necessary and appropriate to redress fully the deprivation of Mr.

Boardley-Murray's rights, to prevent their recurrence in the future

and to protect other employees from such unlawful behavior.

<u>COUNT X</u>
<u>VIOLATION OF PENNSYLVANA HUMAN RELATIONS ACT</u>
<u>Retaliation for Reporting Sexual Harassment</u>
<u>Plaintiff Braheem Boardley-Murray v. All Defendants</u>

168.  Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

169.  Mr. Boardley-Murray engaged in protected activity under the PHRA by reporting sexual harassment as set forth in this complaint, including, but not limited to:

a.  On or about October 31, 2024, Mr. Boardley-Murray contacted his director Defendant McGriff and reported sexual harassment because his co-worker Alexis was telling people that he was sleeping with his cousin, Ms. Fisher, which was not true.

b.  In early November of 2024 Mr. Boardley-Murray met with Mr. Hillary Mafura, who was conducting an investigation of the Coles site and discussed his sexual harassment concerns about the rumor Alexis was spreading about him.

c.  On or about November 20, 2024, reporting to Mr. Briley that a woman who lived next door to the group home, alleged that an RHD employee Kyle Murray (no relation) was sexually harassing her. Mr. Briley reported the sexual harassment to Defendant Branham and Defendant McGriff.

170.   Section 955(e) of the PHRA prohibits "any person, employer, employment agency, labor organization, or employee to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice."

171.   Defendants RHD, Branham and McGriff engaged in materially adverse retaliation against Mr. Boardley-Murray for his protected activity as set forth in this complaint, including, but not limited to:

a. Harassing him in his workplace and spreading false rumors about him to other staff members;

b. Failing to properly investigate or respond to his claims of discrimination and retaliation;

c. Putting him on administrative leave on or about December 23, 2024; and

d. Terminating his employment on or about January 10, 2025.

172.   There was a causal connection between Mr. Boardley-Murray's protected activity under the PHRA and the retaliated materially adverse retaliatory actions taken against him by Defendants RHD, Branham and McGriff.

173.   The retaliation endured by Mr. Boardley-Murray would dissuade a reasonable employee from making complaints of discrimination and harassment.

WHEREFORE, Plaintiff Braheem Boardley-Murray respectfully requests this Court:

A.   Issue a Declaratory Judgment declaring that Defendants' actions set forth herein are unlawful and in violation of the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*;

B.     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination against Mr. Boardley-Murray in violation of the Pennsylvania Human Relations Act and ordering Defendants to reinstate Plaintiff upon such terms and conditions as will return Plaintiff to the position he would have occupied had Defendants not unlawfully discriminated against him;

C.     Enter judgment in favor of Mr. Boardley-Murray, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by him;

D.     Enter judgment in favor of Mr. Boardley-Murray for front pay in lieu of reinstatement;

E.     Enter judgment in favor of Mr. Boardley-Murray awarding him liquidated or punitive damages to the extent allowable by law for the willful violation of the PHRA;

F.     Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff; and,

G.     Award Plaintiff reasonable attorney's fees together with the costs of this action.

Count XI
RETALIATION IN VIOLATION OF PENNSYLVANIA
WHISTLEBLOWER LAW 43 P.S. 1421, *et seq.*, as amended
Plaintiff Braheem Boardley-Murray vs. All Defendants

174.    Plaintiffs incorporate herein by reference the preceding paragraphs as is set forth at length herein.

175.    Mr. Boardley-Murray was required by Defendant's RHD's ethics policies to report suspected waste, billing fraud, and neglect of consumers.

176.    Mr. Boardley-Murray engaged in protected activity under the PAWBL, which included, but is not limited to providing the Commonwealth investigators with information on the following issues involving potential waste, fraud and neglect:

a. One of the consumers was not being given eye drops that he needed by RHD staff members Alexis and Steven Collins, and they were falsely recording in a book that they had been giving the medication. They had falsely claimed to have given the eye drops even on days when the medication was not available to be given.

b. Consumers were claiming they were not able to meet with their support coordinators, but the coordinators were claiming they were meeting in person with the consumers and submitting bills for work Mr. Boardley-Murray did not believe they were doing.

c. Consumers had complaints that were being ignored because Defendant McGriff and Kelly McManus, another RHD manager, were preventing the consumers from making their complaints known.

    d. RHD employee Steven Collins was taking consumers out to shop but then taking the consumer's money and using it for himself.

    e. A consumer reported that an outside contractor from One Well had taken the consumer to a friend's house and made him take a shower at the friend's house which made the consumer very upset and feel violated. The contractors were taking the consumers to places the contractors wanted to go, when they were supposed to be going to places the consumers wanted to go.  This was a potential issue of waste and fraud because the outside contractor was not providing the services they were supposed to provide.

177.  Mr. Boardley-Murray told RHD investigator Hillary Mufasa in November 2024 about these same concerns.

178.  On December 11, Mr. Boardley-Murray communicated with Michelle Holmes, an RHD supervisor about a potential neglect incident where RHD employee Alexis had started a night shift at the Cole site and forced a consumer who had been watching TV in the living room to go into his room, shut his door and told the consumer not to come out so she could sleep during her shift.

179.  Defendants were aware that Mr. Boardley-Murray engaged in protected activity under the PAWBL.

180.  Defendants retaliated against Mr. Boardley-Murray because he engaged in protected activity under the PAWBL, including, but not limited to:

    a. Harassing him in his workplace and spreading false rumors about him to other staff members;

  b. Failing to properly investigate or respond to his claims of discrimination and retaliation;

  c. Putting him on administrative leave on or about December 23, 2024; and

  d. Terminating his employment on or about January 10, 2025.

181. The actions of Defendants by and through their agents, servants, and employees, constitute a violation of the PAWBL.

182. As a direct and proximate result of Defendants' violation of the PAWBL Mr. Boardley-Murray has suffered lost wages, suffered emotional distress, mental anguish, humiliation, loss of life's pleasures, pain and suffering, and has incurred attorneys' fees and costs.

183. Mr. Boardley-Murray is now suffering, and will continue to suffer, irreparable injury and monetary damages, as a result of Defendants' unlawful acts, unless this Court grants the relief requested herein.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A. Issue a Declaratory Judgment declaring that the retaliatory practices set forth herein are unlawful and in violation of the Pennsylvania Whistleblower Law, 43 P.S. 1421, *et seq*.;

B. Enjoying and permanently restraining the violations alleged herein;

C. Compensatory damages to make Mr. Boardley-Murray whole for past and future lost earnings, benefits and earning capacity;

D.    Compensatory damages to Mr. Boardley-Murray for past and future emotional distress, mental anguish, humiliation, loss of life's pleasures, and pain and suffering;

E.    Punitive damages;

F.    Reasonable attorneys' fees and costs; and

G.    Such other and further relief as this Court deems appropriate.

COUNT XII
Philadelphia Fair Practices Ordinance
Phila. Code § 9-1101, et seq.
Retaliation due to reporting Sexual Harassment
Plaintiff Braheem Boardley-Murray vs. Defendant RHD

184.    Plaintiffs re-allege and incorporate by reference the preceding paragraphs as though fully set forth herein.

185.    Mr. Boardley-Murray engaged in protected activity under the PFPO by reporting sexual harassment as set forth in this complaint, including, but not limited to:

a.    On or about October 31, 2024, Mr. Boardley-Murray contacted his director Defendant McGriff and reported sexual harassment because his co-worker Alexis was telling people that he was sleeping with his cousin, Ms. Fisher, which was not true.

b.    In early November Mr. Boardley-Murray met with Mr. Hillary Mafura, who was conducting an investigation of the Coles site and discussed his sexual harassment concerns about the rumor Alexis was spreading about him.

    c. On or about November 20, 2024, reporting to Mr. Briley that a woman who lived next door to the group home, alleged that an RHD employee Kyle Murray (no relation) was sexually harassing her. Mr. Briley reported the sexual harassment to Defendant Branham and Defendant McGriff.

186. Defendant RHD engaged in materially adverse retaliation against Mr. Boardley-Murray for his protected activity as set forth in this complaint, including, but not limited to:

    a. Harassing him in his workplace and spreading false rumors about him to other staff members;

    b. Failing to properly investigate or respond to his claims of discrimination and retaliation;

    c. Putting him on administrative leave on or about December 23, 2024;

    d. Terminating his employment on or about January 10, 2025.

187. There was a causal connection between Mr. Boardley-Murray's protected activity under the PFPO and Defendant RHD's materially adverse retaliatory actions taken against him.

188. The retaliation endured by Mr. Boardley-Murray would dissuade a reasonable employee from making complaints of discrimination and harassment.

189. Defendant RHD retaliated against Mr. Boardley-Murray for engaging in protected activity in violation of the PFPO.

190. Defendant's conduct was outrageous because of the defendant's evil motive or its reckless indifference to the rights of others.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.     Issue a Declaratory Judgment declaring that Defendants' actions set forth herein are unlawful and in violation of the City of Philadelphia Fair Practices Ordinance § 9-1103(1) (PFPO)

B.     Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and employees and those acting in participation with Defendants from engaging in any act or practice of discrimination against Plaintiff in violation of the City of Philadelphia Fair Practices Ordinance and ordering Defendants to reinstate Plaintiff upon such terms and conditions as will return Plaintiff to the position he would have occupied had Defendants not unlawfully discriminated against him;

C.     Enter judgment in favor of Plaintiff, and against Defendants, for back pay in the amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by him;

D.     Enter judgment in favor of Plaintiff for front pay in lieu of reinstatement;

E.     Enter judgment in favor of Plaintiff awarding him liquidated and/or punitive damages to the extent allowable by law for the willful violation of the PFPO;

F.     Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff; and,

G.    Award Plaintiff reasonable attorney's fees together with the costs of
this action.


COUNT XIII
Defamation
Plaintiff Braheem Boardley-Murray vs.vs. All Defendants

191.    Plaintiffs    re-allege    and    incorporate    by    reference    the    preceding
paragraphs as though fully set forth herein.

192.    Mr. Boardley-Murray is a private individual as defined by applicable
Pennsylvania defamation law.

193.    While acting in her capacity as management employee of Defendant RHD,
Defendant McGriff knowingly and falsely and/or with reckless disregard for the truth
caused a letter to be written dated January 10, 2025, claiming Mr. Boardley-Murray
violated safety or health policies and/or negligent/unsafe behaviors that may endanger
another person, destruction of property and/or equipment.  Exhibit S.

194.    Upon information and belief, Defendant McGriff published this letter by
allowing one or more other people to read it.

195.    Upon information and belief, while acting in her capacity as management
employee of Defendant RHD, Defendant McGriff knowingly and falsely and/or with
reckless disregard for the truth told others that Mr. Boardley-Murray violated safety or
health policies and/or negligent/unsafe behaviors that may endanger another person,
destruction of property and/or equipment.

196.    Pleading in the alternative, Mr. Boardley-Murray alleges that Defendant McGriff's defamatory statements may have been made negligently without exercising reasonable care in establishing their accuracy.

197.    Upon information and belief, while acting in her capacity as management employee of Defendant RHD, Defendant Branham knowingly and falsely and/or with reckless disregard for the truth told others that Mr. Boardley-Murray violated safety or health policies and/or negligent/unsafe behaviors that may endanger another person, destruction of property and/or equipment.

198.    Pleading in the alternative, Mr. Boardley-Murray alleges that Defendant Branham's defamatory statements may have been made negligently without exercising reasonable care in establishing their accuracy.

199.    Mr. Boardley-Murray had not violated safety or health policies and/or negligent/unsafe behaviors that may endanger another person, destruction of property and/or equipment.

200.    The false accusation that Mr. Boardley-Murray violated safety or health policies and/or negligent/unsafe behaviors that may endanger another person, destruction of property and/or equipment is defamation per se.

201.    The false accusation that Mr. Boardley-Murray violated safety or health policies and/or negligent/unsafe behaviors that may endanger another person, destruction of property and/or equipment resulted in harm to Mr. Boardley-Murray including the termination of his employment and harm to his personal and professional reputation, resulting in past, present and future loss of earnings and benefits, emotional

distress, mental anguish and suffering, personal humiliation, loss of life's pleasures, pain and suffering, and incurring attorneys' fees and costs.

**WHEREFORE**, Plaintiff respectfully requests this Court to:

A.    Issue a Declaratory Judgment declaring that Defendants' actions set forth herein were defamatory.

B.    Issue preliminary and permanent injunctions enjoining and restraining Defendants, their successors, officers, agents, and employees and those acting in participation with Defendants from engaging in any act or practice of defamation against Plaintiff;

C.    Enter judgment in favor of Plaintiff, and against Defendants, for past and future economic losses, including amount of wages and fringe benefits in an amount of the financial loss determined to have been sustained by her;

D.    Enter judgment in favor of Plaintiff, and against Defendants, for past and future  harm to Plaintiff's personal and professional reputation, emotional distress, mental anguish and suffering, personal humiliation, loss of life's pleasures, pain and suffering.

E.    Enter judgment in favor of Plaintiff, and against Defendants, for punitive damages if the defamatory statements were made knowingly and falsely or with reckless disregard for the truth.

F.    Issue such orders and further relief as may be necessary and appropriate in order to redress the deprivation of rights and privileges sustained by the Plaintiff.

**JURY DEMAND**

Plaintiffs hereby demand a jury to try all claims triable by jury.

Respectfully submitted,

Date:  May 12, 2025

By: *Joseph F. Schwartz, Esq.*
SILVER & SILVER
Joseph F. Schwartz, Esquire
Attorney for Plaintiff Brittany Greenleaf
Identification No.: 87550
42 W. Lancaster Ave., Third Floor
Ardmore, PA 19003
(610) 658 – 1900